<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DONNA FIRESTONE, | Civil Action No. 19-17008 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | December 14, 2020 |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Donna Firestone's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Scott Tirrell's ("ALJ Tirrell") denial of Plaintiff's claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Tirrell's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.     PROCEDURAL AND FACTUAL HISTORY**

   **A.     Procedural History**

On January 8, 2015, Plaintiff filed a Title II application for DIB and a Title XVI application for SSI benefits, alleging disability as of July 10, 2014. (Administrative Record ("R.") at 254–

1

63.) In her DIB and SSI applications, Plaintiff alleged she suffers from the following illnesses, injuries or conditions: Hepatitis C, osteo arthritis, scoliosis, and a herniated disc. (R. 108, 282.) The state agency denied Plaintiff's applications both initially and upon reconsideration. (R. 173–82.) Upon Plaintiff's request, ALJ Tirrell held an administrative hearing on May 16, 2017. (R. 18.) On August 3, 2017, the ALJ issued a written decision that Plaintiff was not disabled and thus not entitled to disability benefits. (R. 15–39.) The Appeals Council adopted the ALJ's findings, but noted that Plaintiff's last date insured for DIB should have been June 30, 2016 rather than December 31, 2014.[1] (R. 1–9.) On judicial review, Plaintiff asks this Court to reverse the Commissioner's decision or remand it for a new hearing. (D.E. 16 at 1.)

### B. Factual History

Plaintiff is fifty–three years old, has a high school education and completed at least one year of college. (R. 32, 283.) She can communicate in the English language. (R. 32, 281.) In her disability report, Plaintiff stated that she stopped working on June 30, 2014, because of her conditions (R. 282). Plaintiff last worked as a cashier at a liquor store. (R. 50–51.) She previously worked as a housekeeper at a hotel, nurses' aid, home patient-care attendant, waitress, and a receptionist. (R. 92–93.)

In her function report, Plaintiff stated that she lives with her boyfriend, drives, attends a methadone clinic, spends time with her grandson, naps frequently, feeds her dog, prepares simple meals, dusts, cleans the toilet bowl, does laundry if someone carries it for her, and can handle her own finances. (R. 300–04.) She states that she watches television as a result of her depression. (*Id.*) Her boyfriend assists with many of the household chores, and, in addition to the above, he

---

[1] In any event, the Appeals Council found that the ALJ had considered all relevant evidence of record related to Plaintiff's applications because he adjudicated the SSI application from January 8, 2015 through August 3, 2017, the date of his decision. (R. 5.) Thus, the only period not addressed by the ALJ was December 31, 2014 through January 8, 2015. (*Id.*)

reported that Plaintiff can bathe and feed herself, and that she does crossword puzzles and attends weekly Bingo. (R. 308–12.) The record contains notes from multiple doctors who treated Plaintiff for psychological and physical impairments. The following is a summary of the evidence.

After stopping work in July 2014, Plaintiff underwent a liver biopsy and the final pathology report reflects a diagnosis of chronic hepatitis with moderate activity and periportal fibrosis, consistent with hepatitis C. (R. 530–31.) Plaintiff visited Dr. Seth Webber, who diagnosed Plaintiff with liver disorder and prescribed medication. (R. 499–500.) Examination revealed that Plaintiff was not distended, but had soft, mild upper abdominal tenderness. (*Id.*) Dr. Webber prescribed Plaintiff medication to take as needed. (*Id.*) Plaintiff did not appear to be in any acute distress and was perceived as well developed and nourished. (*Id.*) She also denied having any of the following symptoms: fever, shortness of breath, palpitations, headache, back pain, neck pain, arthralgia, abdominal pain, diarrhea, nausea, and constipation. (*Id.*)

A September 9, 2014 letter from Dr. Webber stated that Plaintiff has hepatitis C 1a, which she likely contracted from illicit drug use, and noted that Plaintiff had "severe fatigue and joint pain." (R. 496.) In addition, Dr. Webber opined that Plaintiff may benefit from Olysi/Sovaldi, and may not tolerate an alternative treatment method because it could aggravate her symptoms and increase the possibility of reoccurring drug use. (*Id.*) Dr. Webber's request for Olysi and Sovaldi was denied. (R. 532–34.) Plaintiff had a follow-up visit with Dr. Webber in April 2015; her chief complaint was abdominal pain, and she was found to have had soft, diffuse, non-specific abdominal tenderness. (R. 497.)

Plaintiff saw Dr. John Rajapakse from February 2014 through April 2017 and reported a combination of the following: chest congestion, chest tightness, cough, broncholiths, headache, back pain, joint pain, stiffness, swelling, arthralgia, and dyspnea. (R. 419, 424, 427, 431, 433, 436,

3

439, 445, 448, 451, 454, 457, 460, 562, 565, 568.) Dr. Rajapkse diagnosed Plaintiff with headache, nondependent tobacco use disorder, osteoarthrosis, lumbar disc displacement without myelopathy, unspecified myalgia and myositis, hepatitis C, and acute bronchitis. (R. 420, 425, 428, 434, 437, 440, 443, 446, 449, 455, 458, 461, 563, 566, 569.) Plaintiff was prescribed various medications, including: Cirpo, Augmentin, Promethazine-DM, Promethazine-codeine, Proventil HFA, and Percocet. (R. 420, 425, 428, 431, 434, 440, 443, 446, 449, 452, 455, 458, 461, 563, 566, 569.)

In March 2014, X-rays of Plaintiff's spine reflected mild scoliosis, minimal spondylosis, and mild retro-positioning. (R. 469.) An MRI conducted in the same month showed normal alignment of the thoracic and lumber spine with no compression fractures. (R. 472–73.) The MRI revealed mild bilateral facet arthropathy and hypertrophy at the T7-T8 an T8-T9 levels as well as endplate degenerative changes at L3-L4, mild diffuse disc bulge at L4-L5, and minimal bilateral facet arthropathy at L5-S1. (*Id.*) In September 2014, Plaintiff went to the hospital because of pain and swelling in her left knee. (R. 465.) She was admitted and treated for knee cellulitis. (R. 466.)

Plaintiff saw Dr. Marc Weber in August 2015 and complained of back pain as well as right knee pain. (R. 554.) She denied experiencing numbness, tingling, or weakness, as well as clicking, buckling, or locking, and reported that she can sit or stand for about a half hour at a time, and walk two blocks at a time. (*Id.*) Dr. Weber assessed Plaintiff as presenting with chronic lower back pain and right knee pain, multilevel disk bulges, facet arthropathy, and a history of degenerative joint disease of the right knee. (R. 555.) Additionally, Dr. Weber noted that Plaintiff did not use a hand-held assistive device but stated elsewhere that she used a non-prescribed cane to ambulate. (R. 554, 557.) Moreover, an X-ray of Plaintiff's knees from September 2015 appeared normal. (R. 558.)

Plaintiff also saw Dr. Andrew Freedman in April 2017 for dyspnea. (R. 580.) Plaintiff

4

reported smoking 11 to 20 cigarettes a day. (*Id.*) Dr. Freedman noted that Plaintiff had wheezing, and he assessed her as presenting with simple chronic bronchitis and lung nodule. (*Id.*) Plaintiff was prescribed with nebulizer treatments. (R. 581.)

With respect to mental impairments, Plaintiff's psychiatric history dates back to at least 2009 when she was hospitalized two separate times for depression and suicidal thoughts. (R. 413.) Dr. Rajapakse treated Plaintiff for anxiety from February 2014 through April 2017. (*See* R. 419, 424, 427, 431, 433, 436, 439, 445, 448, 451, 454, 457, 460, 562, 565, 568.) During examinations, Dr. Rajapakse noted that Plaintiff appeared agitated and anxious. (R. 420, 425, 428, 434, 437, 440, 443, 446, 449, 452, 455, 458, 461, 563, 566, 459, 566, 569.) Dr. Rajapakse diagnosed Plaintiff with unspecified anxiety, bipolar disorder in partial remission, and recurrent and moderate major depressive disorder. (*Id.*) Plaintiff was prescribed Xanax. (R. 420, 425, 428, 434, 437, 440, 443, 446, 449, 452, 455, 458, 461.)

In February 2015, Plaintiff saw Dr. Theodore Brown for a mental status examination. (R. 413–16.) During this visit, Plaintiff was taking methadone and Xanax, and Dr. Brown noted her extensive history of illicit substance abuse. (R. 413.) Dr. Brown assessed Plaintiff as having major depressive disorder, anxiety disorder, polysubstance abuse dependency disorder, and pain disorder in her back. (R. 416.) Plaintiff's Global Assessment of Functioning ("GAF") score was between 50 and 55. (*Id.*) In March 2015, Plaintiff went to the Lennard Clinic for her anxiety. (R. 480–81.) She received a diagnosis of posttraumatic stress disorder ("PTSD"), opioid dependence, cocaine dependence, and depression. (R. 481.) Her GAF score was assessed at 55. (*Id.*) Plaintiff was prescribed medication and individual psychotherapy. (*Id.*) During a follow-up visit two weeks later, Plaintiff was reportedly "doing fine," and was prescribed medication. (R. 482–84.)

5

### C. Hearing Testimony

Plaintiff appeared and testified at an administrative hearing before ALJ Tirrell on May 16, 2017. (R. 18.) Plaintiff testified that along with her fibromyalgia and fatigue, she was diagnosed with bipolar disorder and PTSD, and thus experiences difficulty with public interactions. (R. 68–69.) The ALJ also heard testimony from an impartial vocational expert, Robin Cook ("VE Cook"). Using the *Dictionary of Occupational Titles*, VE Cook categorized Plaintiff's previous work and then concluded that, with the exception of a housekeeping cleaner, it could not be done by a hypothetical person with Plaintiff's vocational profile and residual functional capacity ("RFC"), as found by ALJ Tirrell. (R. 92–94.) However, VE Cook testified that there were other jobs in the national economy that a person could perform with Plaintiff's age, education, work history, RFC limitations, and an inability to interact with the general public, including photocopy machine operator, office helper, and sewing machine operator. (R. 94–100.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

7

**B.    The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five–step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the

claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85–28, 96–3p, 96–4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the

individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96–8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   DISCUSSION

#### A.

On August 3, 2017, ALJ Tirrell held that Plaintiff was not disabled from the alleged onset date through the date of decision. (R. 34.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date. (R. 21.) At step two, the ALJ found that Plaintiff had severe impairments due to chronic liver disease, hepatitis C, lumbar

degenerative disc disease, PTSD, major depressive disorder, and anxiety disorder. (*Id.*) The ALJ considered Plaintiff's thoracic degenerative disc disease and scoliosis and found them to be non-severe. (*Id.*) Additionally, ALJ Tirrell considered Plaintiff's testimony stating that she has fibromyalgia, but did not find it to be "a medically determinable impairment in this case based upon the requirements of SSR 12-2p." (*Id.*)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.*) The ALJ specifically considered Listing 1.02 for major dysfunction of a joint, 1.04 for disorders of the spine, and 5.05 for chronic liver disease. (R. 21–22.) In order to satisfy Listing 1.02, Plaintiff had to prove that in the affected joint, she had gross anatomical deformity, chronic joint pain, and stiffness with indications of limited motion or other abnormal motion, as well as joint space narrowing, bony destruction or ankylosis. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. Listing 1.02 also requires involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively. *Id.* Here, ALJ Tirrell found that the evidence did not reflect that Plaintiff has difficulty ambulating. (R. 22.) For example, the record does not support that Plaintiff has gait difficulties nor does she require an assistive device for ambulation. (*Id.*) To satisfy Listing 1.04, Plaintiff had to prove nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication "manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Again, the ALJ found that Plaintiff failed to demonstrate that she had difficulty ambulating. (R. 22.) Under Listing 5.05, Plaintiff must establish hemorrhaging, ascites or hydrothorax, spontaneous bacterial peritonitis, hepatorenal syndrome, hepatopulmonary

11

syndrome, or hepatic encephalopathy. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.05. Here, the ALJ found that the record failed to reflect end stage liver disease. (R. 22.)

In addition, ALJ Tirrell considered Listings 12.04 for depressive, bipolar and related disorders, and 12.06 for anxiety and obsessive-compulsive disorders. (R. 21–22.) To satisfy Listing 12.04, Plaintiff had to prove that she met both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. 404, Subpt. P, App. 1 § 12.04. The "paragraph B" criteria require at least one extreme or two marked limitations in any area of functioning. *See* 20 C.F.R. 404, Subpt. P, App. 1 § 12.02.B. The "paragraph C" criteria require that the mental disorder be "serious and persistent," and supported by evidence of both medical treatment and marginal adjustment. *See* 20 C.F.R. 404, Subpt. P, App. 1 § 12.02.C. Here, the ALJ found that "paragraph B" was not satisfied because Plaintiff did not have at least two marked limitations or one extreme limitation. (R. 23.) He also found no evidence of any "paragraph C" criteria. (R. 22–23.) Accordingly, the ALJ concluded that Plaintiff's impairments did not meet the severity of the Listings.

Prior to steps four and five, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," provided that she can never crawl or climb ladders, ropes, or scaffolds.[2] (R. 24.) Plaintiff is also limited to the following activities on occasion: climbing of ramps and stairs, stooping, kneeling, and crouching. (*Id.*) She must also frequently balance. (*Id.*) In addition, Plaintiff cannot work at "unprotected heights, work with dangerous machinery or work with moving mechanical parts" and cannot tolerate "concentrated

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

12

exposure to extreme cold, extreme heat, wetness, humidity, vibration or pulmonary irritants such as fumes, odors, dusts, gases or poor ventilation." (*Id.*)

ALJ Tirrell concluded that Plaintiff failed to establish her claim of total disability. (R. 30.) Although the ALJ acknowledged that Plaintiff "suffered from a medically determinable 'severe' impairment," the evidence showed that Plaintiff can perform basic work-related activities. (*Id.*) ALJ Tirrell gave great weight to the state agency consultant's findings on reconsideration, who determined that Plaintiff can perform light exertional work, notwithstanding Plaintiff's mental impairments and inability to relate well to the general public. (R. 31.) The ALJ did not give significant weight to opinion evidence from Lorraine Wolfson, APN, or Dr. Rajapakse because neither provided detailed reasoning as to the type and extent of Plaintiff's limitations in support of their conclusions that Plaintiff could not perform or function at work. (*Id.*) ALJ Tirrell gave some weight to Dr. Weber's opinion finding that Plaintiff used but was not prescribed a cane. (R. 32.) Moreover, because Plaintiff's Third-Party Function Report was written by a friend, the ALJ gave this lay individual's statement only some weight, noting that it cannot be wholly objective. (*Id.*) Additionally, the ALJ did not give significant weight to the two GAF scores contained in the record, because such scores are "only a current assessment of function and [are] not a longitudinal assessment of function over time." (R. 31–32.)

At step four, ALJ Tirrell found that Plaintiff was unable to perform her past relevant work including as a receptionist at the sedentary level of exertion and as a nurse assistant at the medium level of exertion. (R. 32.) At step five, based on the testimony of VE Cook, the ALJ found that Plaintiff was capable of performing other work that existed in significant numbers in the national economy, such as photocopy machine operator, office helper, and sewing machine operator. (R. 33.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act during the relevant

period. (R. 34.)

B.

On appeal, Plaintiff seeks reversal and remand of the Commissioner's decision. (*See* D.E. 16 at 1.) She asserts that (1) the substantial evidence does not support the ALJ's RFC assessment; and (2) the substantial evidence does not support the ALJ's evaluation of medical opinion evidence. (D.E. 16 at 10–33.) This Court considers the arguments in turn and finds them unpersuasive.

First, Plaintiff contends that ALJ Tirrell failed to articulate any rational supported by the evidence for his conclusion that Plaintiff can perform light work. (D.E. 16 at 11–22.) However, the ALJ sufficiently developed the factual record in support of his decision, summarizing the relevant medical records, opinion evidence, and Plaintiff's activities of daily living. (R. 25–32.) For instance, although Plaintiff's medical records show that she has chronic liver disease and was diagnosed with hepatitis C, Dr. Weber opined that her condition was treatable with Olysi/Sovaldi. (R. 496.) Moreover, as noted by the ALJ, records from July 2014 onward indicate that Plaintiff had mild to no abdominal tenderness, intermittent joint pain, and no fatigue. (R. 387–400, 419–62, 499.)

Next, with respect to Plaintiff's lumbar degenerative disc disease, ALJ Tirrell considered Plaintiff's medical history, including her examinations and treatment notes from February 2014 through April 2017, including Plaintiff's March 2014 MRI and subsequent imaging taken in March 2017. (R. 26–27.) Here, the ALJ found that because Plaintiff's treatment for her allegedly debilitating pain had been conservative, the record did not support any additional limitations. (R. 27.) Specifically, Plaintiff did not seek or require specialized or invasive treatments; she did not have gait difficulty; and while she purportedly used a cane, she was never prescribed a cane or

14

other device to help her ambulate. (*See* R. 419–62, 554–59, 561–70.) Moreover, Dr. Abdelmessieh, the state agency physician, found that Plaintiff could occasionally lift and/or carry 20 pounds, and could frequently lift and/or carry 10 pounds. (R. 149–51, 166–69.)

Accordingly, in light of the substantial evidence reviewed by ALJ Tirrell, this Court finds that he properly determined Plaintiff's RFC. *See Sudler v. Comm'r of Soc. Sec.*, 827 F. App'x 241, 245 (3d Cir. 2020) (finding that "[s]ubstantial evidence support[ed] the ALJ's finding that [plaintiff's] 'impairment could reasonably [have been] expected to cause some of the alleged symptoms [but that her] statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . .'"). Without additional supporting evidence in the record, ALJ Tirrell was permitted to find that Plaintiff's ailments did not significantly limit her ability to perform light work. *See* 20 C.F.R. § 404.1529(c)(3).

Second, Plaintiff purportedly takes issue with the RFC limitations adopted by the ALJ (*see* D.E. 16 at 22–23), specifically those that state Plaintiff cannot work at "unprotected heights, work with dangerous machinery or work with moving mechanical parts" and cannot tolerate "concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration or pulmonary irritants such as fumes, odors, dusts, gases or poor ventilation." (R. 24.) However, Plaintiff seems to argue that these limitations were not needed because jobs in the national economy no longer encompass work under such conditions. (*See* D.E. 16 at 22–23.) To the extent Plaintiff claims that the ALJ refused to acknowledge her severe or non-severe pulmonary impairment at step two, he did acknowledge her breathing difficulty. (R. 25.) Significant here, an ALJ's decision must be "read as a whole" when assessing whether substantial evidence supports an ALJ's finding. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). In this regard, the record reflects that Plaintiff

was prescribed Proventil HFA at least three times, and that she was treated for simple chronic bronchitis and lung nodule in 2017. (R. 452, 563, 566, 580–81.)

Third, Plaintiff contends that the ALJ failed to support her mental RFC limitations with substantial evidence, specifically the findings that Plaintiff may occasionally interact with coworkers and supervisors and may not interact with the general public. (D.E. 16 at 31–32.) However, the record reflects that the ALJ properly considered Plaintiff's mental impairments, including her PTSD, major depressive disorder, and anxiety disorder. (R. 28–30.) For example, the ALJ considered that while Plaintiff was found to be agitated, anxious, and irritable with an inappropriate/blunted affect, she also was also observed to be logical, oriented, cooperative and pleasant. (*Compare* R. 420–82, 566–69, *with* R. 415, 482.) She maintained eye contact and spoke with fluent, clear speech. (R. 415.) Moreover, Plaintiff was prescribed medication to treat her anxiety. (*See* R. 420, 425, 428, 434, 437, 440, 443, 446, 449, 452, 455, 458, 461.)

## C.

Finally, Plaintiff argues that ALJ Tirrell failed to properly weigh the medical and third-party opinion evidence. (D.E. 16 at 23–31.) Significantly, "the Third Circuit has consistently found that 'the opinion of a treating physician does not bind the ALJ on the issues of functional capacity.'" *Ciccone v. Comm'r of Soc Sec.*, No. 14-2005, 2015 WL 727927, at \*6 (D.N.J. Feb. 18, 2015) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)); *see also Coleman v. Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. 2012). "An ALJ can reject a treating physician's opinion . . . where the opinion

is . . . inconsistent with other substantial evidence of record." *Ramos v. Colvin*, No. 14-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) (citation and internal quotation marks omitted).

Here, Plaintiff claims that opinions from Nurse Wolfson and Dr. Rajapakse were automatically rejected because they were rendered on a different disability program form, specifically the Veterans Administration disability ratings form. (*Id.* 23–27.) However, the forms used by Nurse Wolfson and Dr. Rajapakse do not appear to be connected to any veterans-based program. (R. 560, 571.) ALJ Tirrell properly attributed no weight to both Nurse Wolfson and Dr. Rajapakse's opinions because neither elaborated on the type and extent of Plaintiff's limitations to support their conclusions that Plaintiff could not perform or function at work. (R. 560, 571.) Moreover, the ALJ was justified not only in assigning some weight to Dr. Weber and Dr. Brown's assessments and the lay third-party function report, but also in assigning greater weight to the state agency physician's and vocational expert's findings. *See Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration . . . . 'Because [s]tate agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . .'" (quoting SSR 96-6p)); *see also Seewagen v. Comm'r of Soc. Sec.*, No. 18-1818, 2019 WL 1568277, at *7 (D.N.J. Apr. 10, 2019).

Plaintiff may point to evidence that supports a different conclusion, but "[t]he ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x at 479 (citation omitted). Ultimately, "a reviewing court is obliged to consider the entire record, and to determine whether the evidence taken as a whole supports the administrator's decision." *Smith v. Califano*, 637 F.2d 968, 973 (1981) (Adams, J., concurring).

Here, ALJ Tirrell's findings, including his determination of Plaintiff's RFC and his weighing of opinion evidence, were more than adequately supported by the entire record.

## IV. CONCLUSION

For the reasons stated above, this Court finds that ALJ Tirrell's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties